UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| STEVEN L. SEEBER<br>    Debtor | 03-19567<br>SECTION "B" |
| **EMILIA FOURMIGUE  and**<br>**KAY FOURMIGUE LANDRY**<br>    **Plaintiffs** | CHAPTER 7 |
| **Versus** | **ADVERSARY NO.**<br>**04-1061** |
| **STEVEN L. SEEBER**<br>    **Defendant** | |

## MEMORANDUM OPINION

On November 29, 2004 and May 5, 2005, a trial was held on the complaint of Emelia Fourmigue and Kay Fourmigue Landry ("plaintiffs" or "Fourmigue") seeking to deny a discharge to the debtor Steven L. Seeber ("debtor" or "Seeber") under 11 U.S.C. §727(a)(2), (4) and (5).  The primary allegation made by plaintiffs is that the debtor has failed to disclose in his bankruptcy proceedings ownership of various assets, including an interest in a house in Florida, certain restaurant supplies and a vehicle.  Mr. Seeber has answered the complaint, denying the

-1-

allegations. For the reasons expressed, the court will enter a judgment granting the plaintiffs' complaint, and denying the discharge of Mr. Seeber.

## Background

Emelia Fourmigue and Kay Fourmigue Landry are creditors of the debtor, having an unsecured claim stemming from a judgment rendered in their favor and against Fresh Express, Inc. and Steve Seeber, *in solido*, by the Louisiana state court.[1] The genesis of the claim is a loan made by the Fourmigues to Mr. Seeber in connection with the purchase of Fresh Express, which occurred on or about March 7, 1995. The claim was not paid, or not paid in full, and the Fourmigues seek to deny the debtor a discharge.

Debtor and Meghan McHan were married on April 17, 1999. On April 5, 2002, a petition for divorce was filed by the debtor,[2] and a judgment of divorce was entered on June 5, 2002.[3] On April 5, 2002, Meghan McHan and the debtor attended a closing in Florida of certain property from Fred Pace described as:

---

[1] Claim No. 6.; Schedule F. The Fourmigues claim that the debtor, on or about March 7, 1995, borrowed money from Emelia Degan and Louis Foumigue, and purchased a business, known as Fresh Express, Inc., from them. Mr. Fourmigue died prior to institution of this suit. Kay Fourmigue Landry is the child of Louis Fourmigue, and an heir to his estate.

[2] Exhibit 39.

[3] Exhibit 40.

      "Lot 43, Destin Pointe, block 14, Pg. 90-93
      3606 Melrose Avenue
      Destin, Florida 32541"[4]

The debtor has filed two bankruptcy petitions. Mr. Seeber filed a voluntary Chapter 11 proceeding on March 25, 2002, but was dismissed on March 24, 2003 on the motion of the U.S. Trustee. The debtor filed a voluntary Chapter 7 petition on December 13, 2003. The debtor's bankruptcy schedules indicate that he owns no real property or any office equipment, furnishings or supplies. The debtor stated that his vehicle was a 2000 F-150 Ford truck. He listed under question 20 of Schedule B, which requests information regarding contingent and unliquidated claims of every nature, a claim for personal injuries with an unknown value. Schedule B, question 33 is a catchall that asks for ownership of other personal property of any kind, and debtor has answered that he owns a "potential claim for monies remitted to Fred Pace" with a zero value.

One of the main issues in this trial is whether the debtor possesses an interest in the Florida property which the debtor claims was owned solely by his ex-wife. The plaintiffs assert that the debtor concealed his interest in the Florida property, and failed to schedule the asset. The debtor contends that his schedules do not

---

[4] Exhibit 79.

reflect an interest in the Florida property because his ex-wife purchased the property, and she has title to the property.

At issue also is whether the debtor had an ownership interest in certain restaurant equipment and supplies, and a vehicle that he failed to schedule, and generally whether the debtor placed his assets under his ex-wife's or other parties names to conceal his interest and keep the assets out of the reach of creditors.

### **Discussion of the Law**.

A. Section 727(a)(2)(A)

Section 727(a)(2) provides that:

(a) The court shall grant the debtor a discharge, unless-

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
>
> > (A) property of the debtor, within one year before the date of the filing of the petition;

The purpose of § 727(a)(2) is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate.[5] The creditor must prove four elements for a discharge to be

---

[5] *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989)

denied under § 727(a)(2)(A) as follows: (1) a transfer of property; (2) belonging to the debtor; (3) within one year before the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[6]

Evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. Constructive intent is insufficient.[7] Actual intent, however, may be inferred from the actions of the debtor and may be proved by circumstantial evidence.[8] Circumstantial evidence of actual intent to defraud under §727(a)(2)(A) include:

> "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence of cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry."[9]

Additionally, a gratuitous transfer or a transfer to relatives, with other circumstances, will make a finding of actual intent to defraud compelling,

---

[6] *Id.*

[7] *Id.* at 91.

[8] *Id.*

[9] *Id.* at 91, *citing In re Schmit*, 71 B.R. 587, 590 (Bankr. D. Minn. 1987).

notwithstanding the lack of direct evidence of fraud.[10]

In order for a debtor to be denied a discharge where concealment is alleged under § 727(a)(2)(A), the objector must show that (1) the debtor concealed property, (2) the property was property of the estate, (3) the concealment occurred within one year before the bankruptcy filing, and (4) the concealment was made with the intent to hinder, delay, or defraud a creditor.[11]

Concealment, in an action brought under § 727(a)(2), simply means withholding knowledge of an asset by the failure or refusal to divulge owed information.[12] Omitting information in a debtor's bankruptcy schedules may constitute concealment under § 727(a)(2)(A).

Based on the evidence at trial and the testimony of the witnesses, this court is convinced that the debtor possessed an interest in the Florida property, and concealed or transferred that interest by having his wife, the subject of divorce proceedings at or immediately prior to the transfer, take title. The testimony at trial was that the debtor and Meghan McHan entered into an agreement with Fred Pace

---

[10] *Id*.

[11] *In re Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997).

[12] *In re Sowers*, 229 B.R. 151, 156 (Bankr. N.D. Ohio. 1998), *citing In re Martin*, 698 F.2d 883 (7th Cir.1983); *In re Zimmerman*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005)(concealment includes preventing discovery or withholding knowledge or information required by law to be made known).

in 2000 for the construction and purchase of the Destin Pointe, Florida home, and the debtor and/or Curpsee, Inc., a company owned largely by the debtor, paid $138,000 to Fred Pace in cash for the construction of the house.[13] In addition, $84,472.25 in extras were paid by the debtor or his corporation.[14] The debtor participated in the design, construction and financing of the home. For example, change orders were entered that showed that a change in construction plans was made by "Steve or Megan Seeber."[15] The Uniform Residential Appraisal Report for 3606 Melrose Avenue dated December 15, 2001, gives the borrowers names as "Steve Seeber & Megan McHan."[16] The mortgage and riders executed in connection with the financing of the acquisition all bear the signature of Mr. Seeber.[17]

The debtor's explanation for the Florida transaction is not believable. Mr. Seeber initially testified that he paid Fred Pace between $50,000 and $70,000 to build the house in Florida, and that he was going to buy the house. The debtor

---

[13] Exhibit 78.

[14] Exhibits 68, 78, 79.

[15] Exhibits 66, 67, 73.

[16] Exhibit 75.

[17] Exhibits 82, 83, 84, 85.

testified that he backed out of the deal, and his wife Meghan acquired the property in 2003.  Mr. Seeber testified that he had only a verbal agreement with Fred Pace regarding the Florida property, and when his deal fell through, he felt he had no recourse against Mr. Pace for return of funds.

In actuality,  the testimony in the case revealed that  Mr. Seeber, Meghan McHan and Fred Pace on May 26, 2000 had signed a contract to build and purchase the Florida property,[18] and the Seebers or Curpsee paid at least $138,000 to Mr. Pace in connection with the construction prior to the closing.  Although the debtor had agreed to buy the Destin Pointe home, the assignment of that interest was made solely to Meghan McHan.  At the time of the closing, half or more of the purchase price had been prepaid by Seeber and/or Curpsee.[19]  This court finds that the debtor was initially evasive and ultimately, not believable, when testifying. The debtor professed not to recall significant events regarding the Florida property transaction, and contradicted his own testimony on various occasions regarding the details of the transaction.  For instance, the debtor testified that he gave the address of the property as 43 Melrose, instead of its street address of 3606 Melrose, because the home was not constructed and only the lot number existed.  However,

---

[18]  Exhibit 114.

[19]  Exhibits 78, 79.

early documents regarding the Florida property identify it by both addresses, its lot number and the street address.[20]

Ms. McHan testified that the Florida house was hers. Her testimony was that the couple agreed to divide their assets at the divorce, with Meghan receiving the house and Mr. Seeber receiving the restaurant business. She testified that Mr. Seeber's name appears on loan documents because he signed as an accomodation party, and the mortgage company required his signature. This explanation, however, is contradicted by the record.

In the state court divorce proceedings, the petition of divorce states that "petitioner and defendant did not acquire any community property during their marriage, so it will not be necessary for petitioner and defendant to enter into a partition of same."[21] The evidence at trial was that during the marriage, the debtor and/or Curpsee, Inc. paid at least $138,000 to Fred Pace for the construction of a residence in Destin Pointe, Florida. This interest was owned as community property. There was never a partition or accounting of the debtor's interest in the

---

[20] Exhibit 75. On December 17, 2001, an appraisal of the property was conducted for Debtor and Meghan McHan, listing the property address as 3606 Melrose Avenue, Destin, Florida and the legal description as Lot 43, Destin Point, A Planned Unit Development. Exhibit 66 contains a proposal from Destin Flooring, Inc dated Jan. 27, 2001 that appears to bear the debtor's signature, that lists the installation address at "Destin Pointe 3606 Melrose Dr."

[21] Exhibit 39.

funds or the Florida property. Additionally, debtor's schedules indicate that Ms. McHan remains an owner of Curpsee, Inc.,[22] and that the debtor did not receive "the business" and Ms. McHan the Florida home as testified to at trial. Whatever the debtor's agreement with Ms. McHan in the divorce, it was not effectuated, and a partition or settlement of property was never confected.[23]

Circumstantial indicia of actual fraudulent intent are present in this case. The Florida property was taken in the name of debtor's ex-wife, and the closing was postponed so that it would occur on the very day the petition of divorce was filed by Mr. Seeber,[24] and a close family relationship exists between the parties. While Ms. McHan testified that she and the debtor agreed she would receive the house and the debtor the business, it appears that she remained a part owner of the business. No other consideration appears for the taking of title solely in the name of Ms. McHan, even though substantial sums were spent by Mr. Seeber or his business prior to the divorce toward the construction of the Florida property.

---

[22] Exhibit 43.

[23] *In re Hadley*, 70 B.R. 51, 53 (Bankr. D. Kan.1987) (holding that the debtors' failure to list assets on their bankruptcy schedules can be construed as concealment both before and after the filing of the bankruptcy petition).

[24] Exhibit 78.

The chronology of events also supports a conclusion that actual intent to defraud exists. On October 9, 2001, a judgment was rendered by the Fourmigues against Fresh Express, Inc. and Steve Seeber, *in solido*.[25] On March 25, 2002, Mr. Seeber filed a voluntary Chapter 11 petition,[26] however, the case was dismissed on March 24, 2003 on the motion of the U.S. Trustee.[27] On April 5, 2002, the debtor filed divorce proceedings against Meghan McHan.[28] On the same day or immediately following the filing of the divorce proceedings, the debtor and Meghan McHan signed documents in connection with the closing of the Florida property.[29] The debtor filed this voluntary Chapter 7 proceeding on December 13, 2003. The cumulative effect of the foregoing is that, after the Fourmique judgment was entered, major items of property were shielded from attachment and/or concealed from creditors. For the foregoing reasons, the court concludes that Mr. Seeber transferred and/or concealed his interest in the Florida property, and will deny discharge.

---

[25] Foumigue proof of claim, Case 03-19567.

[26] Exhibit 23.

[27] Exhibit 37.

[28] Exhibit 39.

[29] Exhibits 79, 82, 83, 84.

The actual transfer of the Florida property to Ms. McHan occurred in 2002, more than one year prior to the debtor's petition, which was filed on December 13, 2003. Case law provides that the one year lookback period found in §727(a)(2)(A) is tolled during the pendency of the period of a previous bankruptcy case.[30] Mr. Seeber filed a voluntary Chapter 11 case on March 25, 2002.[31] The Fourmigues filed a complaint to deny the debtor a discharge in the previous Chapter 11 proceeding, but the matter was terminated upon the dismissal of Mr. Seeber's prior case. This court holds that the lookback period in §727(a)(2)(A) was tolled during the pendency of the debtor's prior bankruptcy proceeding. Because the lookback period was tolled for the period of one year, the transfer/concealment occurred within one year of the date of the filing of the instant bankruptcy proceeding on December 13, 2003.

B. Section 727(a)(4)

Alternatively, for the reasons assigned, this court holds that the debtor's failure to disclose the circumstances surrounding the acquisition, transfer and status of the Florida property constitutes a false oath sufficient to deny discharge

---

[30] *In re Womble*, 289 B.R. 836, 853 (Bankr. N.D. Tex. 2003)("if the creditor objecting to discharge has similarly objected in the prior case . . . it is equitable to toll the lookback period during the prior case."), aff'd, 299 B.R. 810, 812 (N.D. Tex. 2003).

[31] Bankruptcy No. 02-12067.

under §727(a)(4). Section 727(a)(4)(A) provides that:

> (a) The court shall grant the debtor a discharge, unless-
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
> (A) made a false oath or account;

In order to prevail under section 727(a)(4)(A), the creditor must prove:

(1) the debtors made a statement under oath;
(2) the statement was false;
(3) the debtors knew the statement was false;
(4) the debtors made the statement with fraudulent intent; and
(5) the statement related materially to the bankruptcy case.[32]

False oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." [33] Statements under oath included in §727(a)(4)(A) include statements on the bankruptcy petition, schedules, statement of financial affairs, statements at creditor's meetings, testimony at Rule 2004 examinations and answers to interrogatories.[34]

The success of the bankruptcy system hinges upon a debtor's veracity and

---

[32] *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

[33] *Id*.

[34] *In re Self*, 2005 WL 1308916 (Bankr. N.D.Ill. 2005)(and cases cited therein).

willingness to make full disclosure.[35] "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight".[36]

The subject matter of a false oath is "material" and thus sufficient to deny discharge if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property.[37] The purpose of Section 727(a)(4)(A) is to ensure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of the examinations or investigations to determine whether the information provided is true.[38] Even if assets are worthless or invaluable to creditors, the debtor has an obligation of full disclosure.[39] Furthermore, the existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless

---

[35] *In re Gipe,* 157 B.R. 171, 178 (Bankr. M.D. Fla.1993).

[36] *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987)

[37] *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984), *citing, In re Steiker,* 380 F.2d 765, 768 (3rd Cir.1967).

[38] *Oldendorf v. Buckman,* 173 B.R. 99, 104 (E.D.La.1994).

[39] *Id.* at 105.

indifference to the truth, and, therefore, the requisite intent to deceive.[40] As noted by the court in the case of *In re Chalik,* "[t]he recalcitrant debtor may not escape a Section 727(a)(4)(A) denial of discharge by asserting that they admittedly omitted or falsely stated information concerning a worthless business relationship or a holding; such a defense is specious".[41]

The denial of a discharge under Section 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence. Rather, to sustain an objection to discharge under this section, the debtor must have willfully made a false statement with intent to defraud his creditors.[42]

The debtor has been evasive and provided contradictory information in connection with his financial dealings and assets. As stated above, among other things, the debtor's testimony regarding the transfer of the Florida property is not believable. The debtor failed to disclose the proper address of the property, hindering discovery relating to the Florida property. The debtor failed to disclose the existence of the written construction and purchase agreement and failed to

---

[40] *Id.*

[41] *Chalik,* 748 F.2d at 618.

[42] *In re Townsley*, 195 B.R. 54, 65 (Bankr. E.D. Tx. 1996), *citing, In re Bodenstein,* 168 B.R. 23, 32 (Bankr. E.D. N.Y. 1994).

completely disclose payments made by him or on his behalf for the construction of the property at trial, at the §341 meeting and in connection with discovery. These nondisclosures were material because they concerned the discovery of assets, business transactions and disposition of assets. Based upon the record in the case, this court finds that discharge is denied under §727(a)(4)(A).

Because discharge is denied under §§727(a)(2)(A) and (a)(4), it is not necessary to discuss the remaining charges levied against the debtor. An appropriate judgment will be entered.

New Orleans, Louisiana, July 5, 2005.

_____
Jerry A. Brown
U.S. Bankruptcy Judge